MATEO ORTIZ, Plaintiff and Appellant, *v.* ROQUE STELLA, HIS HEIRS, ETC., Defendant and Appellee.

No. 6244.   Argued February 19, 1934.—Decided June 30, 1934.

*F. Cervoni Gely* for appellant.   *T. Bernardini de la Huerta* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

This is an action of filiation decided by the District Court of Guayama against the plaintiff, Mateo Ortiz, and appealed to this Supreme Court. After the appeal taken had been perfected and both parties had filed their briefs, both the attorney for the appellant, Francisco Cervoni Gely, and the appellant himself, Mateo Ortiz, died. This Court continued the hearing before we had any notice of the death of the appellant, and set February 19, 1934, as the date for the new hearing, ordering the party appellant to notify the appellee of the date and of his brief.

The appellee has appeared anew with a death certificate of the appellant, Mateo Ortiz, and praying this court to decide the case on its merits on the basis of the briefs filed by the parties, and in accordance with Section 43 of the Code of Civil Procedure. The Section cited by the appellee reads thus:

"If an action is commenced within the time prescribed therefor, and the plaintiff or plaintiffs, if there be more than one, shall die and the cause of action is one that survives, or if the defendant or any of the defendants, if there be more than one, shall die, the cause of action shall not abate by reason of such death, but the court on

application of any one of the parties shall summon the executor, administrator or heir of such deceased party or parties, and such summons shall be issued, executed and returned in the manner required by law for ordinary summons, and the executor, administrator or heir shall thereby be required to appear and prosecute (or defend) such suit, and after due service of such summons has been had, the cause shall proceed in the name of the new party or parties, and the court shall thereafter render such judgment as the law and the facts may authorize.

"If the action is pending on appeal before the Supreme Court, the cause of action shall not abate by reason of the death of any of the plaintiffs, if the action is one that survives, nor by reason of the death of any of the defendants, but the court shall proceed to adjudicate such cause and render judgment thereon, as if all parties thereto were living, and such judgment shall have the same force and effect as if rendered in the lifetime of all the parties thereto."

We are of opinion that the second paragraph of the preceding section grants us authority to decide the case on its merits. Both parties have seasonably filed their briefs in defense of their respective contentions, and the defendants, on these grounds, have submitted the case to the court's decision. By virtue of the authority vested on us by that law we shall consider the issues raised.

It is alleged in the complaint that Roque Stella died in Patillas, December 27, 1929, and that during the year 1902 and for many years previous he lived in public, notorious and open concubinage with Alejandrina Ortiz; that both were single and able to contract marriage without dispensation; that as a result of the concubinage of Mr. Stella and Mrs. Ortiz the latter gave birth to the plaintiff, Mateo Ortiz, who was born in the Ward Lizas of Maunabo on November 23, 1902; that the aforesaid Roque Stella publicly and privately acknowledged plaintiff Mateo Ortiz as his child, of whom he spoke as "son," and for whom he cared as such; that he suggested the name he should bear and had him baptized by the Roman Catholic Church, which was the faith professed by Mr. Stella, who blessed the plaintiff paternally, and

that all his acts were demonstrative of open and tender paternity.

The defendants filed a demurrer to this complaint alleging that the time for filing suit had prescribed. The lower court overruled the demurrer and cited in its behalf the cases of *Ciuró* v. *Ciuró*, 31 P.R.R. 288 and *Guadalupe* v. *González*, 34 P.R.R. 643. Subsequently this Court decided the case of *González* v. *Rodríguez*, 43 P.R.R. 63, and the defendants demurred again requesting the reconsideration of the ruling on the grounds set forth in this case. The court agreed and rendered judgment dismissing the complaint on the ground that the action had prescribed.

The appellant alleges that the court, misled by the theory in the case of *González* v. *Rodríguez*, erred in dismissing the complaint. We have seen that the demurrer was originally dismissed on the grounds of the decision in *Guadalupe* v. *González*, and that thereafter it was sustained on motion for reconsideration on the basis of the case of *González* v. *Rodríguez*. As that was the last expression of the criteria of this Court in regard to the issue set forth, it is quite natural that the lower court felt bound to follow the opinion delivered in that case, which textually transcribed reads:

"This was a suit for filiation. The District Court of Arecibo rendered the following opinion upon sustaining a demurrer:

" 'On September 28, 1929, Jovito González brought an action of filiation in the District Court of San Juan against Jovito Rodríguez, and averred that he was born in Morovis on the 3rd of March, 1903, while his mother, Ventura González, and his alleged father, Jovito Rodríguez, were living in public concubinage; that said Jovito Rodríguez considered him privately and publicly as his son, acting with regard to him as a father towards his son, and that such relations have at no time been interrupted since the birth of the complainant. The defendant demurred to the complaint on the ground of prescription. Pursuant to an order for a change of venue, this case has come before this court.

" 'The demurrer was heard on March 17, 1930, the parties appearing through their attorneys, and the case remained under advisement.

" 'The plaintiff was born, as he alleges under oath, on the 3rd of March, 1903, and therefore came of age on the 4th (sic) of March, 1924. In accordance with Section 199 of the Civil Code in force at the date of his birth, and action of filiation only lasted two years after he had come of age. The action, therefore, only could have been begun on or before the 3rd of March, 1926. The complaint was filed, as we have said, on the 28th of February, 1929, when the action had already prescribed. *Jesús* v. *Succession of Pérez Villamil,* 18 P.R.R. 392; *Orta* v. *Arzuaga,* 23 P.R.R. 241.

" 'The demurrer is sustained.'

"The appellee suggests that the case of *Ciuró* v. *Ciuró,* 31 P.R.R. 691, is also applicable.

"We have little or nothing to add to the previous jurisprudence on the matter. It seems to us that the attempts of the appellant simply cover the same ground that was covered by the losing parties in the previous cases.

"The judgment should be affirmed."

In the cases of *De Jesús* v. *Succession of Pérez Villamil,* 18 P.R.R. 241, and *Orta* v. *Arzuaga et al.,* 23 P.R.R. 241, which are cited in the opinion transcribed above, the persons with a right of action of filiation were born under the provisions of Law XI of Toro, and accordingly their right to exercise the action abated according to the decisions of this Court prior to the repeal of Section 199 of the Revised Civil Code, which reads thus:

"An action to claim filiation may be filed at any time within two years after the child shall become of age, and it shall be transmitted to his heirs, if he should die during his minority, or in a state of lunacy. In these cases heirs shall have five years during which to enter an action."

The same Act that repealed the preceding Section, in 1911, approved Section 194 according to which the action for the recognition of natural children can only be established during the life of the presumptive fathers and a year after their death except in the instances mentioned in that Section.

In the case of *Guadalupe* v. *González* an action of filiation was begun November 10, 1931. It was proved that the

plaintiff was between 23 and 25 years old at the time the complaint was filed, therefore that he was born under the provisions of Section 199 of the Civil Code, and before Section 194 of that same Code was approved in 1911. "Therefore, the Court stated, "the law applicable according to the fourth of the Transitory Dispositions of the Civil Code would be Section 194 of the said Code, as amended in 1911, and as by that amendment it is established that an action for acknowledgment can be brought during the life of the putative parents, *or one year after their death,* and as a year after the death of the putative father had not elapsed when the action was brought in this case, the trial court erred in holding that the action was barred."

It is quite clear that in the cases of *Guadalupe* v. *González* and *González* v. *Rodríguez* the right to establish the action of filiation had not prescribed in 1911, when the amendments to the Civil Code were approved. These cases are in support of different rules. The first one is in regard to Section 194, approved in 1911, and not the law in force at the time of the birth of the plaintiff, and sustains that the action is not barred; the second one sustains that the law applicable is the one existing at the time of the birth of the plaintiff and that according to that act the right of action subsisted but for two years after his majority.

The case at bar is reconcilable to the ones we have just cited. Mateo Ortiz was born in November 23, 1902, when the law in force provided that the right of action of filiation prescribed two years after the party reached his majority. In 1911, when the amendments to the Civil Code were approved, the plaintiff was not as yet nine years old. His right to claim filiation was still outstanding. His action had not prescribed by the passing of time. The plaintiff filed suit February 18, 1930, before one year of the death of his presumptive father had elapsed, who died December 27, 1929. Did the new law extend his right to claim recognition to one year after the death of his presumptive father or was

that right extinguished upon arriving to his twenty-third birthday? This is the issue we must decide that the opinion of this Court may be settled.

Section 1839 of the Civil Code provides that prescription which began to run before the publication of this Code shall be governed by the prior laws; but if, after this Code became operative, all the time required in it for prescription has elapsed, it shall be effectual, even if according to said prior laws a longer period of time may be required.

Manresa states that statutes prior to the Code are effectual so long as they favor or do not prejudice prescriptions which began to run and were not barred at the publication of the same. After stating this opinion, and adhering strictly to the words of the Section cited above which corresponds to Section 1939 of the Spanish Civil Code, the aforesaid commentator says:

"The ground for this provision is, of course, the importance that a thoughtful study of the same merits, that the prescription which has begun but has not ended is not a vested right but a mere expectancy whose execution or performance depends upon myriad eventualities; and as it is not a vested right the regulation thereof can not be deemed subject to the provisions of previous legislation under which provisions the said right was perfected, or the juridical right which originated it or gave rise to its existence."

Due to the manner in which Section 1839 of the Civil Code is worded and the nature of the action, we are of opinion that we must examine the fourth temporary provision for the execution of the Civil Code, in respect to the facts set forth in this case.

We must note that Section 199 does not use the verb *prescribe* but *last,* in referring to the time within which one may exercise the action of filiation.

In the case of *Gual* v. *Bonafoux,* 15 P.R.R. 545, this Court passes upon the fourth temporary provision for the execution of the Spanish Civil Code and applies Section 137 of that Code to a case where the persons that claimed their filation

were born under the provisions of Law XI of Toro. From the opinion delivered in that case we transcribe the following:

"But, whether or not, the plaintiffs, Luis and Alfonso Gual, have proven the acknowledgment of the natural filiation which they claim, either under the Law of Toro, as construed by the Supreme Court of Spain, or according to the provisions of the former Civil Code and the revised one, we understand that the duration of their right of action for acknowledgment should be governed by article 137 of the former Civil Code, which took effect in this Island by virtue of the Royal Decree of July 31, 1889, and continued in force until 1902, when it was substituted by the Revised Code.

"Rule four of the temporary provisions for the application of the aforesaid Code, in its portion pertinent hereto, reads:

" 'Actions and rights arising before this Code became operative, and not exercised, shall continue with the extension and according to the terms recognized by prior legislation, but shall be subject, with regard to the exercise, *duration,* and proceedings for enforcing them, to the provisions of this Code.'

"The right of the plaintiffs, Luis and Alfonso, to recognition as natural children, and, consequently, the action for a declaration of this right, having arisen before the old Spanish Civil Code went into effect, both right and action must subsist with the extension and according to the terms recognized by the prior legislation; but neither can have a longer *duration* than that prescribed by the Code.

"*Extension and terms* carry with them ideas entirely distinct from that of *duration,* the first two words determining the scope and efficacy of a right or action, while the third word refers to the time during which they are to have life and effectiveness. There is no antinomy or contradiction in the precepts of rule four transcribed above. Could any doubt arise as to their signification and meaning, this is dispelled in the preliminary explanation given in the Spanish Civil Code, when it says:

" 'But if it is equitable to respect rights acquired under the prior legislation, although they have not been exercised, no consideration of justice demands that their subsequent exercise, their *duration,* and the proceedings instituted for their recognition, should be exempt from the provisions of the Code.'

"Article 137, to which we have referred, reads as follows:

" 'The actions for the acknowledgment of natural children can be instituted only during the life of the presumed parents, except in the following cases:

" '1. If the father or mother died during the minority of the child, in which cases the latter may institute the action before the expiration of the first four years of its majority.

" '2. If, after the death of the father or mother, some instrument, before unknown, should be discovered in which the child is expressly acknowledged.

" 'In this case the action must be instituted within the six months following the discovery of such instrument.'

"According to the facts stated in his opinion by the judge below, the plaintiff, Luis Gual, was born on October 11, 1868, and his presumed father, Tomás Gual y Silven, died on January 8, 1895, at which date, wherefore, the former had attained his majority, under article 320 of the aforesaid Code, he being then 23 years of age.

"This being so, Luis Gual could not exercise the action for the acknowledgment of his natural filiation after the death of Tomás Gual, which occurred on January 8, 1895, when the Spanish Civil Code was in force in this Island.

"As to the other plaintiff, Alfonso Gual, as he was born on December 7, 1874, and had not reached 23 years when Tomás Gual died on January 8, 1895, since he would have attained that age on December 7, 1897, it is evident that he could exercise the action for the acknowledgment of his natural filiation up to four years thereafter—that is, to December 7, 1901—at which date said action was extinguished by virtue of the provision contained in paragraph one of article 137 of the former Civil Code, above transcribed.

"And if Luis and Alfonso Gual, according to the Spanish Civil Code, could exercise the action for the acknowledgment of their natural filiation, the former only during the life of .his father, and the latter only up to December 7, 1901, said action could not have revived to be exercised on April 9, 1907, when the complaint was filed."

In the opinion we have just cited this Supreme Court, in interpreting the fourth temporary provision, applies the previous law to hold that a right of action was extinguished for which prescription began to run, according to the repeated decisions of this Court, under Law XI of Toro. It is true that this subsequent law is applied limiting the right to exercise the action as regards the element of time, and that we are not dealing with a case where the prior law extends the

period of time of prescription. But we do not think that the fourth rule should be construed in the sense of favoring exclusively the person that might be benefited by the prescription. The words in that Section are clear and since there is no restriction attached to them, they should not be restrictively construed, especially to cut off an offspring of the right to claim his filiation.

This Court has decided that the words *extension* and *terms* determine the scope and efficacy of a right of action, and that the word *duration* refers to the length of time in which they shall have life and efficacy. Section 199, which has been repealed, fixed the length of time the action was to last, and the fourth rule provides that the actions and rights determined by the same, although governed by the previous legislation, are subject none the less in regard to their duration, exercise and proceedings to uphold them, to the provisions of the Code. If according to Section 199 the action of filiation lasted until two years after the offspring had attained his majority and the duration and exercise of an action are subject to the provisions of the Code, we are of opinion that the subsequent provisions of the Code are applicable to determine whether that action is barred or not, if it is still outstanding or if it has been extinguished by the passage of time. The retroactive nature of the fourth rule applied to the case at bar does not prejudice a vested right because in 1911, when the Civil Code was amended, the action of Mateo Ortiz was existant in full force and effect, and if it was not extinguished and the extinguishment thereof depended upon the passage of time, the mere expectancy or hope of which Manresa speaks, which depends on myriad eventualities, had not become a vested right at the time the amendments to the Civil Code were adopted.

We are of opinion that the doctrine set forth by this Court in the case of *Guadalupe* v. *González, supra,* should prevail, and that the right of action has not prescribed.

The judgment appealed from should be reversed and the case remanded to the lower court for further proceedings consistent with the terms of this opinion.